UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                             Criminal Action No. 12-20500

vs.                                           HON. MARK A. GOLDSMITH

JEQUEZ DEQUINN BARNETT,

    Defendant.
_____/

**OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS (DKT. 19)**

**I. INTRODUCTION**

Defendant Jequez Barnett is charged with one count of possession with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Indictment (Dkt. 1). Defendant filed a motion to suppress evidence obtained from two cell phones in Defendant's possession (Dkt. 19). The Government filed a response (Dkt. 22), and Defendant filed a reply (Dkt. 25). The parties agreed that an evidentiary hearing was not necessary. On April 9, 2013, the Court heard oral argument on the motion. For the reasons that follow, the Court denies the motion to suppress.

**II. BACKGROUND**

The facts of this case are not in dispute. On approximately July 14, 2012, UPS employees notified law enforcement officials of a suspicious package that was sent from Arizona and addressed to Lamar Horton, 2559 Bonbright Street, Flint, Michigan. The parties stipulated

that this package was initially scheduled for delivery to 2559 Bonbright before 9:30 a.m. on July 14, 2012. Stipulation (Dkt. 24). Law enforcement officers had a drug sniffing dog scan the package, and the dog alerted to the presence of narcotics. Inside the package, officers found approximately 688 grams of cocaine. The Government states that this amount of cocaine is worth over $10,000, Gov't Resp. to Mot. to Suppress at 4 (Dkt. 22), and Defendant does not dispute this.

Two days later, on July 16, 2012, officers from the Flint Area Narcotics Group ("FANG") obtained an anticipatory search warrant for 2559 Bonbright Street. The warrant authorized a search of the residence after delivery to the residence of the package containing cocaine. Search Warrant, Ex. A to Mot. to Suppress (Dkt. 19-1). The affidavit in support of the warrant was prepared by Detective Brad Wangler, a law enforcement officer with seven years of experience; he is currently assigned to FANG, and he has eleven months of experience in controlled substances investigations. Affidavit ¶¶ 1-2 (Dkt. 19-1). The affidavit states that the package, which was sent from Phoenix, Arizona and addressed to Lamar Horton, 2559 Bonbright, contains approximately 700 grams of cocaine. Id. ¶ 11. According to the affidavit, Arizona is a known source location for transmitting narcotics to Michigan. Id. ¶ 10. The affiant states that it is his belief, based on his training and experience, that a person involved in distributing and receiving controlled substances often also maintains additional contraband and controlled substances at his residence. Id. ¶ 14. He further states that he has "reasonable and probable cause" to believe that controlled substances and paraphernalia connected to controlled substances would be found at 2559 Bonbright. Id. ¶¶ 4-6. Finally, the affidavit declares that Detective Wangler and his fellow officers at FANG intend to deliver the package to 2559 Bonbright and subsequently execute the search warrant at that residence. Id. ¶ 12.

On July 16, 2012, an officer, dressed as a UPS delivery person, took the package to 2559 Bonbright and handed the package to a man, later identified as Defendant Jequez Barnett. Several minutes later, officers knocked at the door and entered to execute the search warrant. The officers found Defendant standing in the backyard talking on a cell phone and holding another cell phone. In the house, the officers found a loaded shotgun and a digital scale with apparent cocaine residue on it. One of the cell phones in Defendant's possession indicated that a text message had recently been sent from the phone, stating, "Da box is here!"

### III. ANALYSIS

At a suppression hearing, the government has the burden of demonstrating, by a preponderance of the evidence, that the search or seizure was not a constitutional violation. See United States v. Bradley, 163 F. App'x 353, 357 (6th Cir. Dec. 21, 2005) (citation omitted).

In the instant case, Defendant seeks to suppress all information obtained from the cell phones in his possession. Def. Mot. to Suppress Br. at 4 (Dkt. 19). Defendant contends that the anticipatory search warrant is invalid, because nothing in the affidavit creates probable cause to believe that the triggering condition of the warrant – the package's successful delivery to 2559 Bonbright – would occur. Id. at 5-6. Defendant further argues that the good-faith reliance rule does not apply here, because the warrant was so lacking in indicia of probable cause that no reasonable officer would have relied on it. Id. at 7.[1]

The Government responds that the monetary value of the cocaine – over $10,000 –

---

[1] Defendant also argues that the search and seizure of the cell phones was not a legitimate search incident to an arrest. Def. Br. at 7-8. He argues that searching the phones was not required to protect officer safety or preserve evidence, and that the nature and type of information stored on cell phones creates a broad Fourth Amendment protection applicable to cell phones. Id. at 7-9.

However, the Government does not contend that the evidence from the cell phones was obtained in a valid search incident to an arrest. Because this issue is not raised by the Government as a ground on which to uphold the search, the Court need not decide it.

creates probable cause for successful delivery of the package, because it was likely that the shipper knew and trusted someone at the residence to receive the valuable package. Gov't Resp. Br. at 4 (Dkt. 22). The Government also relies on United States v. Turner, 491 F. Supp. 2d 556, 559 (E.D. Va. 2007), holding that a package containing valuable contraband, on a "sure course" to a destination prior to police involvement, creates probable cause that the package will be delivered at the destination address. Id. at 5. The Government argues, in the alternative, that the good-faith rule would provide a basis for denial of the motion, because the FANG officer acted in good faith in relying on the warrant.

Defendant distinguishes Turner on the grounds that the two-day delay in the delivery of the package in the instant case increased the probability that the resident would grow suspicious and refuse the package. Rep. Br. at 1-2 (Dkt. 25). Defendant also argues that the monetary value of the cocaine in the package is not sufficient to find a likelihood that the package would be accepted, because it would be problematic to pinpoint a monetary value (whether $100 or $10,000) that would trigger probable cause. Id. at 3.

In light of these arguments, the Court turns first to the validity of the anticipatory warrant. In United States v. Grubbs, 547 U.S. 90, 94 (2006), the Supreme Court explained that an anticipatory warrant "is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." (citations and quotation marks omitted). "Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time – a so-called 'triggering condition.'" Id. The Supreme Court further explained:

> [F]or a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that if the triggering condition occurs "there is a fair probability that contraband or evidence of a crime will be found in a particular

place," but also that there is probable cause to believe the triggering condition will occur.

Id. at 96-97 (emphasis in original).

In the instant case, the triggering condition for the anticipatory warrant was the controlled delivery of the package containing contraband to the address listed in the affidavit. Affidavit ¶ 12; see also Search Warrant (Dkt. 19-1) (authorizing a search "after delivery of the package referred to in the affidavit"). In assessing whether the probable cause requirement is satisfied by an anticipatory warrant triggered by the controlled delivery of a package, some courts have required a showing that the contraband was on a "sure course" to the residence prior to any police involvement. See, e.g., United States v. Elst, 579 F.3d 740, 745 (7th Cir. 2009) ("[S]ome circuits – even ours – have required a showing that the contraband was on a 'sure course' to the place to be searched to support a finding of probable cause for an anticipatory warrant."); United States v. Ricciardelli, 998 F.2d 8, 13 (1st Cir. 1993) ("We adopt the 'sure and irreversible' course standard as a means of judging the validity of anticipatory warrants."); United States v. Dornhofer, 859 F.2d 1195, 1198 (4th Cir.1988) ("We adopted the analysis of the Ninth Circuit . . ., and held that an anticipatory warrant is permissible where the contraband to be seized is on a sure course to its destination, as in the mail . . . ." (citations and quotation marks omitted)). The purpose of the "sure course" requirement is "to prevent law enforcement authorities from creating the circumstances which give rise to probable cause to search . . . ." United States v. Dennis, 115 F.3d 524, 529-530 (7th Cir. 1997).

The Sixth Circuit has also applied the "sure course" standard, but precedent in this circuit indicates that the fact that contraband is on a "sure course" to delivery at a residence may not, without more, support a finding of probable cause to search the residence. In United States v. Lawson, 999 F.2d 985, 986-987 (6th Cir. 1993), the defendant moved to suppress evidence

5

found in a search pursuant to the execution of an anticipatory search warrant. Officers had intercepted a package that was being shipped to the defendant's residence; upon opening the package, the officers found six ounces of cocaine. Id. at 986. The triggering condition for the anticipatory warrant was successful delivery of this package. Id. at 986. In determining that the affidavit in support of the warrant established probable cause, the court stated:

> Although United States v. Rey, 923 F.2d 1217 (6th Cir.1991), may be read to stand for the proposition that a warrant to search an address may be based solely on the fact that a package containing illegal substances is on a "sure course" to its destination (as in the mail), we note that in Rey and the instant case there were additional facts in the magistrate's consideration of the "totality of the circumstances." The magistrate judge was in a position to determine that one does not send six ounces of cocaine through the mail to a specific address on a whim. The magistrate judge also knew through the affidavit that the cocaine in the package was concealed in an attempt to avoid detection. This factor makes it less likely that the defendant was "set up" by someone and more likely that the cocaine was intended to reach its destination undetected. All of the information contained in the affidavit could reasonably lead a person to conclude that an experienced trafficker in narcotics sent the package in question. Consequently, it was very likely the address on the package was the one at which it was intended to arrive.
>
> Under the "totality of the circumstances," the magistrate had a "substantial basis" for finding probable cause.

Id. at 988. Therefore, the Lawson court concluded that the fact that the package was on a "sure course" to its destination, along with the quantity of cocaine in the package and the fact that the cocaine was concealed, was sufficient to provide probable cause to search the residence to which the package was addressed.

Another case illustrating how the "sure course" factor should be evaluated is United States v. Long, 42 F.3d 1389 (Table) (6th Cir. 1994). In Long, customs inspectors discovered several child pornography tapes at a mail facility, en route to the defendant's residence. Id. at **2-3. Law enforcement officers obtained a search warrant, made a controlled delivery of the tapes to the defendant's residence, and then executed the search warrant on defendant's

6

residence.  Id.  The court listed several factors that supported a finding of probable cause to search the residence.  First, it noted that "packages containing illegal substances . . . were addressed to defendant's residence."  Id. at *7.  The court continued, "Although we need not, and do not, conclude that this fact alone is sufficient to constitute probable cause for a search of defendant's residence for additional child pornographic materials, we determine, as we did in Rey and Lawson, that such circumstances are significant in the determination of probable cause."  Id.  Therefore, while the Sixth Circuit in Long found it significant that the contraband was sent in the mail, on a sure course to the defendant's address, the court again declined to conclude that the "sure course" standard is, without more, sufficient to make a determination of probable cause.

The second factor cited by the Long court in support of its holding was that the affidavit contained a statement by a special agent that the agent believed other evidence related to contraband materials would be found in the defendant's residence.  Id.  The court noted that it "recognized the importance of the opinions of a learned law enforcement official . . . the conclusions and inferences stated by a person in light of his experience and training in the relevant field could be given 'considerable weight.'"  Id.  The final factor the court found persuasive was that "no evidence exists to support an inference that the video tapes depicting minors engaged in sexually yes

wellexplicit conduct were addressed to defendant on a whim or as part of a set up."  Id. at 8.

The Sixth Circuit case of United States v. Bender, 265 F.3d 464 (6th Cir. 2001) is also useful to an analysis of the factors applied by the Sixth Circuit in determining whether an anticipatory warrant triggered by a controlled delivery of contraband meets the probable cause

7

requirement. In this case, law enforcement officers intercepted a package containing cocaine en route to a residence via Express Mail. The court concluded, "The observed frequency of Express Mail drug deliveries between Florida and the Nashville area, the positive identification of a controlled substance by a drug-detection dog, and the discovery of approximately 21.6 grams of cocaine base in the Express Mail package all supported the issuance of an anticipatory search warrant." Id. at 470 (citation omitted).

The Court notes that the Sixth Circuit cases discussed above consider whether an anticipatory search warrant affidavit established probable cause to search the residence to which the package containing contraband was addressed. The above cases, which were decided prior to the Supreme Court's decision in Grubbs, do not specifically consider whether the affidavit established probable cause to believe that the triggering condition – the delivery of the package – would occur. Regardless, the cases are useful in that they establish several factors that the Sixth Circuit generally considers in determining whether the anticipatory search warrant affidavit provides probable cause to search the residence at issue.

The following factors, if met, would weigh toward a finding of probable cause in these circumstances: (i) the package was on a "sure course" to the residence prior to any police interception or involvement; (ii) there was a high quantity and/or value of contraband in the shipped package; (iii) the contraband was concealed; (iv) an experienced law enforcement agent provided his reasoned belief that additional contraband materials would be found in the residence; (v) there was a lack of evidence that the contraband was sent to the residence on a whim or as part of a set-up; and (vi) there was a high frequency of contraband deliveries from the city or region from which the package was shipped.

In considering whether probable cause existed to search Defendant's residence in the

present case, the Court considers only those facts that were "known to the magistrate at the time of the probable cause determination." Lawson, 999 F.2d at 988. The Court therefore considers only those facts that are in the affidavit presented to the magistrate. However, the facts the Court may consider are not limited to those relating to the controlled delivery itself. See United States v. Penney, 576 F.3d 297, 312 n.6 (6th Cir. 2009) ("That a magistrate may rely on information in the affidavit other than the facts regarding the anticipated event in the context of an anticipatory search warrant is undisputed. Federal courts, including ours, have relied on such information to uphold a broader scope for the search than would be justified on the basis of the 'triggering' controlled delivery alone.").

The Court concludes that particular facts in the affidavit support a finding that probable cause existed to search Defendant's residence. First, the affidavit indicates that the package was on a sure course to 2559 Bonbright, Flint, prior to police involvement. Aff. ¶ 11. The package was addressed to that residence and was in the process of being delivered at the time that it was intercepted. Id. Second, the affidavit indicates that the package contained approximately 700 grams of cocaine, id., a relatively significant quantity with a high street value. Third, the affiant, an experienced FANG detective, provided his opinion that controlled substances and related paraphernalia would be found at the residence. Id. ¶¶ 5-6. Fourth, there was no evidence that the cocaine was being mailed to 2559 Bonbright as part of a set-up or on a whim. Fifth, the affidavit indicates that Arizona is a known source location for sending narcotics to Michigan. Id. ¶ 10. Based on this evidence, the magistrate had a substantial basis for concluding there was probable cause to search the residence.

The Court's conclusion that there was probable cause that the triggering condition would occur is supported by Turner, 491 F. Supp. 2d 556. There, law enforcement officials intercepted

9

a package sent through FedEx, containing approximately one kilogram of cocaine, en route to the defendant's residence. Id. at 557. The officers obtained an anticipatory search warrant for the defendant's residence, for which the triggering condition was that someone at the residence accepted the package. Id. at 558. After the package was delivered and accepted, officers executed the warrant and searched the residence. Id. The court concluded that the affidavit provided probable cause to believe that the triggering condition would occur, based on the following factors: (i) rejection of the box was "unlikely as the box contained $20,000 worth of cocaine and was sent via FedEx overnight service"; (ii) the speed of the law enforcement officers in obtaining a warrant allowed the box to be delivered shortly after it was scheduled for delivery; and (iii) the package was on a "sure course" to the defendant's residence prior to police involvement. Id. at 559-560. As in Turner, the package sent to Defendant contained a large and valuable quantity of cocaine and was on a "sure course" to Defendant's residence.

Defendant, however, argues that Turner is distinguishable and that there did not exist probable cause to believe that the package would be successfully delivered. Defendant offers two reasons in support of his argument. First, because the law enforcement officers delayed the delivery of the package two days past the expected delivery date, Defendant argues that there was a greater chance that a person at the residence would grow suspicious and refuse to accept the package. Second, he argues that the monetary value of the cocaine in the package should not provide a basis for probable cause, because it would be problematic to draw the line at any specific monetary value that would support probable cause. The Court does not find either argument convincing.

Regarding Defendant's first argument, the Court concludes that any suspicion engendered by the delay in delivery of the package does not suffice to alter the probable cause

10

determination. Packages sent through mail carriers are often delayed several days for a variety of reasons, so a short delay in delivery time would not necessarily raise suspicions of police interception of the package. The Court also notes that, in this instance, the expected delivery date was July 14, 2012, which was a Saturday. UPS does not deliver on Sundays, so the late delivery in this case is more comparable to a one-day delay than a two-day delay. While delivery that is postponed for a week or more may be sufficient to raise strong suspicions of police tampering, the delay in this case was for a relatively brief period of time.

The Court is aware that the opinion in Turner concluded that the delayed delivery of a package marked for priority overnight shipping and scheduled for morning delivery "would have drastically increased the probability that the intended recipient would grow suspicious and deny the package." Turner, 491 F. Supp. 2d at 560 n.3. In the instant case, the package was shipped on July 13, 2012, Aff. ¶ 11, and was scheduled to arrive on July 14, 2012, in the early morning. Therefore, it appeared to have been on an expedited delivery schedule; the Court, however, disagrees with the Turner court's conclusion that any delay would "drastically increase[]" the likelihood that the recipient would deny the package. For the reasons explained above, the Court concludes that a short delay in delivery time would not necessarily raise suspicions of a police investigation. Furthermore, the delay in delivery time is only one factor to consider in the probable cause analysis. The "sure course" factor and the $10,000 value of the cocaine in the package lead to a "fair probability" that the package would be successfully delivered to the listed address, despite the minor delay. Grubbs, 547 U.S. at 95 ("Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." (citation and quotation marks omitted)). For these reasons, the Court concludes that the delayed delivery does not disrupt the finding of probable cause.

Defendant also argues that the Court should not consider the $10,000 value of the cocaine in the package. The Court disagrees. Sixth Circuit precedent establishes that the value or amount of shipped contraband materials is a factor that may be considered in making a probable cause determination regarding an anticipatory warrant. See Lawson, 999 F.2d at 988 ("The magistrate judge was in a position to determine that one does not send six ounces of cocaine through the mail to a specific address on a whim."); Bender, 265 F.3d at 470 ("[T]he discovery of approximately 21.6 grams of cocaine base in the Express Mail package . . . supported the issuance of an anticipatory search warrant."). Furthermore, the Court notes that a package containing very valuable contents is less likely to have been sent to a random address on a whim than is a package containing less valuable contents. In other words, the value of the cocaine in the package indicates that the shipper of the package expected someone to receive the package. It is unlikely that the shipper would send the package to a random address – an action that would amount to throwing away $10,000 worth of cocaine. Therefore, the Court concludes that the value of cocaine in the package does support a determination that there was probable cause that someone at the residence would receive the package.

Furthermore, although Defendant argues that it would be impracticable to pinpoint a monetary value that would give rise to probable cause, the Court need not do so. The Sixth Circuit has indicated that the discovery of 21.6 grams of cocaine in a shipped package supports a finding of probable cause, and the amount discovered in the package shipped to 2559 Bonbright – 688 grams – is significantly more than 21.6 grams. This is not to say that the value of contraband in a shipped package is dispositive of the probable cause issue; instead, it is one of the factors that courts may consider. This Court concludes that the approximately $10,000 value of cocaine in the package sent to 2559 Bonbright supports a finding of probable cause that the

package would be accepted.

For the above reasons, the Court concludes that the affidavit in support of the anticipatory warrant contained sufficient particularized facts to establish probable cause that the triggering condition to the warrant would occur.

In the alternative, the Court concludes that the search should be upheld because the law enforcement officers who executed the warrant reasonably, and in good faith, relied on the warrant.  The Supreme Court has held, "[W]hen an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . there is no police illegality and thus nothing to deter [by excluding evidence found during the search]." United States v. Leon, 468 U.S. 897, 920-921 (1984).  Therefore, evidence would not be excluded if it was found during a search executed pursuant to an invalid warrant, as long as the officers reasonably relied on the warrant.  However, if the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," then the good-faith rule would not apply.  Id. at 923 (citations and quotation marks omitted).

Defendant argues that the warrant was indeed so lacking in any indicia of probable cause as to render any belief in the validity of the warrant unreasonable.  However, the Court has found that the warrant and affidavit in support established probable cause to search the residence at issue, for the reasons set forth at length above.   Therefore, the affidavit is not so lacking in any indicia of probable cause as to make any reliance on it unreasonable.

## IV.  CONCLUSION

For the reasons stated above, the motion to suppress (Dkt. 19) is denied.

SO ORDERED.

Dated: May 22, 2013  　　　　　　　　　　s/Mark A. Goldsmith
　　　　Flint, Michigan  　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　United States District Judge

**CERTIFICATE OF SERVICE**

　　　　The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 22, 2013.

　　　　　　　　　　　　　　　　　　　　　s/Deborah J. Goltz
　　　　　　　　　　　　　　　　　　　　　DEBORAH J. GOLTZ
　　　　　　　　　　　　　　　　　　　　　Case Manager